UNITED STATES of America, Appellee,

v.

Robert Lee FERRARA and Phyllis Marjorie Ferrara, Appellants.

No. 77–1620.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 17, 1978.

Decided Feb. 23, 1978.

Rehearing and Rehearing En Banc
Denied March 13, 1978.

Philip F. Cardarella, Kansas City, Mo., on brief, for appellants.

Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., and William A. Keefer, Strike Force, Dept. of Justice, Kansas City, Mo., on brief, for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

The defendant-appellants, husband and wife, were charged with one count of conspiracy (18 U.S.C. § 371), five counts of causing the transportation of stolen goods in interstate commerce (18 U.S.C. §§ 2314 and 2), and three counts of disposing of stolen goods constituting interstate commerce (18 U.S.C. §§ 2315 and 2). A jury convicted on all counts, and defendants have taken this timely appeal.

The evidence, viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), may be summarized as follows. The defendants operated their own business, a Missouri-based "Filter Queen" vacuum cleaner distributorship. At the heart of this enterprise was a sales crew which made house calls upon prospective buyers. Beginning in the summer of 1976 the defendants placed orders, in extraordinary quantities, for various items they claimed were relevant to their sales operation (*e. g.,* as "door openers" or incentive awards to the sales crew). On July 19, 1976 the defendant wife ordered from Plumrose Company 210 cases of one-pound canned Danish hams, having a value of approximately $20,000.00. On August 2 a similar order was placed for 110 cases, having a value of approximately $10,000.00. On August 16 the defendant wife placed yet a third order with Plumrose, on this occasion for 180 cases of one-pound hams and 70 cases of three-pound hams, having a total value of approximately $20,000.00. On September 20, 1976 the defendant wife placed an order with the Planters Company for 210 cases of Planters Potato Chips and 210 cases of Planters Peanuts, having a total approximate value in excess of $5,000.00. On October 29, 1976 the defendant wife placed an order with the Zenith Distribution Corporation for 14 microwave ovens, having an approximate value in excess of $5,000.00.

All orders were shipped to the defendants' place of business from points outside the state. The defendants would sell the

merchandise shortly after it arrived. Many of the hams were sold to area grocery stores, while others were disposed of at Kansas and Missouri fairs; the potato chips and peanuts were sold at a Kansas City fair; the microwave ovens were sold to individuals through a newspaper advertisement.

It is undisputed that defendant never paid the suppliers for any of the goods. When ordering the hams, the defendant wife used the fictitious name of Janice Reynolds; further, she misleadingly in- .formed Plumrose that she represented Skaggs Drug Center. When ordering the potato chips and peanuts, the defendant wife used the fictitious name of Stella Farr and informed Planters that she was associated with K–Mart. When ordering the ovens, the defendant wife truthfully gave her name and business association; however, she told the Zenith representative that the ovens were to be used as premiums for sales people, when in fact the ovens were immediately merchandised to the public. Generally defendants disposed of the goods at below cost. A jury could well conclude that defendants had never intended to pay for any of the ordered merchandise.

Defendants make only one legal argument on appeal. They contend that under both 18 U.S.C. § 2314[1] and § 2315[2] the fraudulent or otherwise unlawful taking of the goods must precede the time of interstate transportation, and that in the instant case the wrongful act occurred after interstate transportation. Defendants particularly rely on the fact that they did not have physical possession of the goods until arrival of the shipments.

We must reject defendants' argument, since we are of the view that wrongful conduct within the meaning of §§ 2314 and 2315 preceded the act of interstate transportation.

It is well accepted that the aim of the National Stolen Property Act (18 U.S.C. §§ 2314 and 2315) is

to prohibit the use of interstate transportation facilities for goods having certain unlawful qualities. This reflects a congressional purpose to reach *all ways* by which an owner is wrongfully deprived of the use or benefits of the use of his property. . . . Congress by the use of broad terms was trying to make clear that if a person was deprived of his property by unlawful means amounting to a forcible taking or a taking without his permission, by false pretense, by fraud, swindling, or by a conversion by one rightfully in possession, the subsequent transportation of such goods in interstate commerce was prohibited as a crime. [Emphasis supplied.]

*Lyda v. United States,* 279 F.2d 461, 464 (5th Cir. 1960); *see United States v. Ludwig,* 523 F.2d 705 (8th Cir. 1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976). We have only recently observed that "the accepted construction of the term 'stolen' . . . in the . . . National Stolen Property Act . . . includes 'all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny.'" *United States v. McClintic,* 570 F.2d 685 (8th Cir. 1978) (quoting *United States v. Turley,* 352 U.S. 407, 417, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)).

In the instant case there can be no doubt that the defendants' victims had been effec-

1. Section 2314 provides in relevant part:

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . .
. . .
Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. Section 2315 provides in relevant part:
Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more . . ., moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken
. . .
Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

tively "swindled" once the goods were loaded on interstate carriers bound for defendants' place of business. Thus, the goods had "unlawful qualities" prior to the act of interstate transportation. *See Lyda v. United States, supra.* The transportation was not rendered innocent by the fact that the fraud did not reach fruition until arrival of the goods and defendants' physical possession of the shipments. *See United States v. Willis,* 528 F.2d 381 (9th Cir. 1976).

Under defendants' theory of the case, culpability would turn on the fact that defendants were not personally involved in the act of interstate transportation. However, the defendants were wholly responsible, through their fraudulent orders, for the interstate transportation of the goods, and the National Stolen Property Act clearly encompasses both transporting and causing to be transported. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); 18 U.S.C. § 2. The Act is thus meant to reach the fraudulent scheme whereby the criminal is the efficient cause of the interstate transportation but manages personally to avoid the transporting act.

The judgments of conviction are affirmed.