UNITED STATES of America, Plaintiff,

v.

Kenneth A. WEINER, Steven M. Lewin, and Alvin B. Gendelman, Defendants.

Crim. A. Nos. 89–80883–01 to 89–80883–03.

United States District Court, E.D. Michigan, S.D.

Jan. 17, 1991.

Sheldon Light, John Roth, Asst. U.S. Attys., Detroit, Mich., for U.S.

Paul D. Borman, Federal Defender, Kenneth R. Sasse, Detroit, Mich., for Weiner.

Richard M. Lustig, Birmingham, Mich., for Lewin.

Martin E. Crandall, Stringari, Fritz, Kreger, Ahearn, Bennett and Hunsinger, P.C., Detroit, Mich., for Gendelman.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendants Kenneth A. Weiner, Steven M. Lewin and Alvin B. Gendelman ("Weiner," "Lewin," "Gendelman") are charged with operating a fraudulent pyramid investment scheme in violation of federal law. Specifically, they are charged with aiding and abetting one another, 18 U.S.C. § 2, in the crimes of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343, and in the interstate transportation of property taken by fraud, 18 U.S.C. § 2314; conspiring to defraud the United States Internal Revenue Service in violation of 18 U.S.C. § 371; and filing false income tax returns in violation of 26 U.S.C. § 7206(1).

The matter is now before me on defendants' Rule 29 motions for judgment of acquittal. These motions were brought at the conclusion of the government's case and were renewed at the close of the defense. At both junctures I denied defendants' motions. Reasons were given and are now amplified herein.

■ A trial judge confronted with a Rule 29 motion must consider all of the evidence in the light most favorable to the government and grant the motion when it appears to the court that the evidence is insufficient to sustain a conviction. *See, e.g., United States v. Adamo*, 742 F.2d 927, 932 (6th Cir.1984). The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. *Id.* It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.* Defendants' motions are judged against this standard.

## I. *The Scheme To Defraud Investors*

■ First, defendants move to dismiss counts 2–38 of the superseding indictment on the ground that the government failed to offer sufficient evidence of a scheme to defraud investors. The government presented numerous witnesses who testified that Weiner, and those operating with him, induced people to invest in gold, gold futures, gold certificates, etc. through false stories of an international cartel, or "group," with which Weiner was allegedly affiliated. Based on these representations and the promise of high rates of return in short time periods, numerous people invested with Weiner and his co-defendants. The government also presented evidence that investors' monies were placed in bank accounts which were, in turn, used to pay returns to other investors. An independent, profit-making enterprise was not shown.

From this evidence a reasonable jury could conclude that defendants were running a "Ponzi scheme," wherein a person borrows a sum of money from "A," then borrows from "B" to repay "A," then borrows from "C" to repay "B" and so on. *See Cunningham, Trustee of Ponzi v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924); *Conroy v. Shott*, 363 F.2d 90 (6th Cir.1966); *United States v. Rasheed*, 663 F.2d 843, 849 n. 1 (9th Cir.1981), *cert. denied* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). Accordingly, counts 2–38 cannot be dismissed on this ground.

### a. *Mail and Wire Fraud*

■ Counts 2–10 of the superseding indictment charge defendants with violating

18 U.S.C. § 1343 by making interstate telephone calls in furtherance of their alleged scheme to defraud. Defendants seek dismissal of these counts, arguing that the government failed to offer sufficient evidence of specific phone calls made in furtherance of a scheme to defraud. Specifically, defendants point to several investors who testified that any interstate telephone conversations with Weiner dealt with matters related to the investment scheme, although they could not remember the specific content of those conversations. Defendants argue that a more specific showing is required, *i.e.*, specific recollection of particular phone conversations and their precise relationship to the investment scheme. I do not agree.

At trial, numerous witnesses testified to numerous interstate telephone conversations with Weiner. They further testified that these conversations always involved matters related to the investment scheme. More definite testimony is not required for a reasonable jury to conclude that these calls were made in furtherance of the scheme to defraud.

b. *Interstate Transportation of Property Taken By Fraud*

Counts 13–38 of the indictment charge defendants with transporting and causing to be transported in interstate commerce securities and money of the value of $5,000 or more, knowing the same to have been taken by fraud, in violation of 18 U.S.C. § 2314. Each count refers to a specific check that allegedly represents an investment or investment return of the scheme to defraud. According to defendants, the evidence offered at trial cannot support a conviction on several of these counts because the essential elements of § 2314 have not been met.

■ The essential elements of § 2314 are: (1) transporting, or causing the transportation, (2) in interstate commerce, (3) of property valued at $5,000 or more, (4) with knowledge that it has been stolen, converted, or fraudulently taken from its rightful owner. *U.S. v. Cardall*, 885 F.2d 656 (10th Cir.1989). Defendants dispute the suffi-

ciency of evidence regarding the first and fourth elements of § 2314, as applied to several checks.

#### (1) *Transporting Or Causing Transportation*

■ Defendants argue that they did not "cause" the interstate transportation of checks identified in counts 18, 22, and 38 of the indictment. Count 18 involves a check sent from Michigan by an alleged middleman in the scheme to someone in Cincinnati who apparently invested anonymously through the middleman. Counts 22 and 38 involve investment return checks distributed to Michigan investors who then transported the checks to other states for reasons unrelated to the scheme. Defendants argue that they did not "cause" the interstate transportation of these checks, and that such transportation was not foreseeable by them.

Causation under § 2314 is more broadly defined. To show that defendants caused the interstate transportation of checks, the government need not show that such transportation was foreseeable to defendants, *United States v. Scarborough*, 813 F.2d 1244, 1245–46 (D.C.Cir.1987), nor that the acts of transportation were done in furtherance of the scheme to defraud. *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954). It is sufficient to show that defendants knowingly placed these checks in the stream of commerce by distributing them to investors or middlemen in the alleged scheme to defraud.

#### (2) *Defendants' Knowledge That Transported Property Was Taken By Fraud*

■ Defendants offer a variety of arguments challenging the sufficiency of evidence showing their knowledge that certain checks were taken by fraud. First, they argue that investment checks written by persons who were recruited by middlemen cannot be property that defendants knew was taken by fraud, since the government did not show defendants' knowledge of specific misrepresentations made by particular middlemen.

Defendants misconstrue the element of knowledge which must be proved in this case. The government need only show defendants' knowledge that the transported checks were taken by fraud, and this knowledge may be inferred from proof that defendants acted with reckless disregard for the truth or with a conscious purpose to avoid learning the truth about the unlawful scheme with which these checks were connected. *United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir.1983), *cert. denied* 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984). If defendants knew their investment scheme was generally fraudulent, as substantial evidence suggests, it need not be shown that each check acquired from investors was obtained by false representations made by defendants or that defendants were aware of the specific false representations made by all middlemen in every instance.

■ Defendants also seek dismissal of counts involving checks which were written by out-of-state investors and sent into Michigan. Defendants argue that the interstate transportation of these checks is not actionable under § 2314 because these checks traveled in interstate commerce prior to the completion of the alleged fraud, such completion occurring when the checks were received by defendants in Michigan. Thus, defendants contend, they could not have known that these checks were taken by fraud at the time they allegedly caused their interstate transportation and, consequently, the requirements of § 2314 cannot be met.

Contrary to defendants' position, § 2314 is not limited to situations where interstate transportation occurs prior to fraud completion, but also seeks to prevent the irrevocable completion of partially executed frauds. *See, e.g., United States v. Pomponio*, 558 F.2d 1172, 1175 (4th Cir.1977); *United States v. Sheridan*, 329 U.S. 379, 384, 67 S.Ct. 332, 334, 91 L.Ed. 359 (1946); *see also United States v. Ferrara*, 571 F.2d 428, 430 (8th Cir.1978) (transportation of fraudulently taken property is not innocent conduct under § 2314 merely because the fraud does not reach fruition until arrival of the goods and defendants' physical possession). Accordingly, § 2314 reaches checks sent by out-of-state investors to defendants in Michigan.

■ However, even if § 2314 was held to be limited to situations where interstate transportation occurs after the fraud is complete, there is evidence that such transportation occurred here. These checks were transported in interstate commerce after the alleged fraud was complete because defendants deposited them in Michigan banks, which sent them back to out-of-state banks where the funds were drawn. This is sufficient to satisfy the transportation requirement of § 2314. *See Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

■ Defendants additionally contend that § 2314 cannot apply to counts involving checks which defendants sent to out-of-state investors as returns on their investments because these checks were "newly created," and therefore were not "taken by fraud." Defendants' position is clearly not the law. To establish the crime of interstate transportation of money taken by fraud, the government is not required to show that the transported funds were precisely the ones taken from defrauded investors. *U.S. v. Cardall*, 885 F.2d 656, 674 (10th Cir.1989). It is sufficient if the item transported is directly derived from the property taken by fraud. *Id. See also United States v. Lennon*, 814 F.2d 185, 189 (5th Cir.1987); *United States v. Levy*, 579 F.2d 1332, 1335–37 (5th Cir.1978) (checks themselves need not be obtained by fraud, if underlying funds were obtained by fraud).

The government offered evidence showing that investment return checks were drawn on bank accounts comprised almost exclusively of funds obtained from other investors pursuant to the alleged scheme to defraud. Thus, a reasonable jury could conclude that investment return checks were derived directly from fraudulently obtained funds, and that the interstate transportation of investment return checks violated § 2314.

■ Finally, defendants argue that certain interstate transportation counts must be dismissed because they relate to specific checks which were either written or received by investors who did not testify at trial, and thus the government could not have proved that defendants knew these checks were taken by fraud, as § 2314 requires. Defendants interpret § 2314 too narrowly. The government presented evidence showing that the checks in question were deposited in, or drawn out of, bank accounts which defendants used to maintain their alleged scheme to defraud. The government also offered evidence showing that virtually all funds in those accounts were derived from the investment scheme. From this evidence the jury could reasonably infer defendants' knowledge that these checks were taken by fraud or derived directly from funds taken by fraud, even if the parties who wrote or received those checks did not testify at trial. *See generally U.S. v. Cardall,* 885 F.2d 656 (10th Cir.1989).

## II. *Conspiracy To Defraud United States*

■ Count 39 of the indictment charges defendants with a conspiracy to defraud the Internal Revenue Service of the United States by obstructing the ascertainment, computation, assessment and collection of income tax revenue in violation of 18 U.S.C. § 371. It is well settled that a conspiracy to defraud the United States includes a conspiracy to impede, obstruct, and defeat the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment and collection of federal income tax. *United States v. Klein,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). However, defendants argue that they cannot be convicted of such a conspiracy because the government presented no evidence showing defendants knowingly conspired to impede the lawful functions of the Internal Revenue Service, and because the overt acts which allegedly furthered the conspiracy were all legal.

■ Defendants characterize neither the facts nor the law correctly. The government presented voluminous evidence from which the jury could infer a knowing conspiracy to defraud the Internal Revenue Service; specifically, cash and cashier's checks under $10,000, allegedly designed to avoid government detection; the use of multiple bank accounts; the absence of comprehensive recordkeeping by defendants; defendants' failure to report substantial income on their tax returns; and the fact that many investors understood from defendants that they could choose not to report profits from the scheme. While many of these activities are not criminal, standing alone, when these devices are used as a means of defrauding the Internal Revenue Service, an illegal object is proven. *United States v. Jerkins,* 871 F.2d 598, 603 (6th Cir.1989). It is for the jury to decide whether these devices were used as a means of defrauding the Internal Revenue Service.

■ Finally, Gendelman argues that he is entitled to judgment of acquittal on count 39 because the government presented no evidence that he and Weiner entered into even a tacit agreement to impede the lawful functions of the Internal Revenue Service. While it is necessary to prove that the co-conspirators agreed on the central objective of the conspiracy, the agreement may consist of nothing more than a passive understanding. *United States v. Brown,* 739 F.2d 1136, 1142 (7th Cir.1984). Although the government presented no direct evidence of such an understanding, the jury could reasonably infer that understanding from the overall structure of the scheme, and from defendants' apparent complicity in the scheme. Accordingly, judgment of acquittal is not warranted on this count.

## III. *Willfully Filing False Income Tax Returns*

■ Counts 40 and 41 charge Weiner with violating 26 U.S.C. § 7206(1) by willfully filing false income tax returns for the years 1984 and 1985. Weiner contests the adequacy of evidence showing unreported

income for 1984. However, the government presented testimony of substantial unreported income for both years based upon their analysis of his expenditures during those years. This evidence, viewed in the light most favorable to the government, precludes judgment of acquittal on these counts.

■■■ Weiner additionally argues that count 41 should be dismissed because his 1985 tax return included a disclosure statement notifying the government of Weiner's alleged inability to determine what income, if any, he derived from the investment scheme. Weiner argues that this statement immunizes him from a charge of willfully filing a false return. I cannot agree. It is for the jury to determine whether Weiner willfully understated his 1985 income, and it can consider what effect, if any, the disclosure statement has on that determination.

■■■ Gendelman argues that count 45, which charges him with willfully filing a false tax return for 1984, should be dismissed because, in sum, Gendelman received no profits from the scheme in that year. The government, on the other hand, argues that each investment transaction must be considered separately and that this approach shows Gendelman made substantial profits in 1984 that he did not report. Under the Internal Revenue Code, a taxpayer is required to include and report in his tax return all gains, profits, or income which are actually or constructively received by him during the year covered by the tax return. A taxpayer may receive income in a particular year, although it is not actually reduced to his possession in that year, if he constructively receives the income. Income is constructively received if it is credited to the taxpayer's account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. Treas. Reg. § 1.451, 1.451–2; *Blum v. Higgins,* 150 F.2d 471 (2d Cir.1945); *Helvering v. Horst,* 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75 (1940). From the evidence presented at trial, the jury could reasonably conclude that Gendelman constructively received income in 1984 which he willfully did not report, and thus I cannot grant judgment of acquittal on this motion.

IV. *Aiding and Abetting*

Gendelman and Lewin make similar arguments disclaiming their criminal liability for counts which identify overt acts allegedly performed solely by Weiner in furtherance of the scheme to defraud. Gendelman argues that he did not know half of the investors named in the first thirty-eight counts of the superseding indictment and, therefore, those counts should be stricken, as to him, under the rule against multiplicitous indictments. *See U.S. v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988). Lewin argues that he cannot be convicted of counts involving transactions between Weiner and investors whom Lewin did not know or deal with, since a criminal conspiracy is not alleged as to the unlawful acts identified in the first thirty-eight counts of the superseding indictment.

■■■ Gendelman and Lewin misconstrue the law of aiding and abetting. When a defendant is proved to be a participant in a scheme to defraud, and a document is mailed in furtherance of the scheme, he may be convicted of mail fraud, or at least of aiding or abetting the fraud, 18 U.S.C.A. § 2, even if he did not personally mail the document or know that specific document was mailed. *See United States v. Johnson,* 700 F.2d 699 (11th Cir.1983); *United States v. Joyce,* 499 F.2d 9, 16 (7th Cir. 1974) (a member of a mail fraud scheme is responsible for any letter which any other member of the scheme causes to be mailed in execution of the scheme); *see also United States v. Newton,* 756 F.2d 53 (8th Cir. 1985), applying same principle to aiding and abetting liability under 18 U.S.C. § 2314. Accordingly, if Gendelman and Lewin aided and abetted Weiner's fraudulent scheme, they are liable for any unlawful acts done in furtherance of the scheme, whether or not they were aware of those specific acts.

V. *Severance*

■■■ Throughout the trial, defendants repeatedly made motions for severance and

**756**

those motions were repeatedly denied. Although I explained my reasons for denying these motions on several occasions, I wish to amplify those reasons here. Essentially, defendants claimed they were entitled to severance because their defenses were so antagonistic they could not receive a fair trial if not tried separately: Defendants are well aware, however, that in the United States Court of Appeals for the Sixth Circuit, the standard for severance is strict. As the court stated in *U.S. v. Horton*, 847 F.2d 313 (6th Cir.1988):

> Separate trials are not mandated merely because one defendant claims that he and a co-defendant will present antagonistic defenses. Different defenses by co-defendants do not require a severance of their trials. To prevail on a motion for severance, the defendants must show that antagonism between co-defendants will mislead or confuse the jury.... The mere fact that each defendant "points the finger" at another is insufficient; the defendant must show that the antagonism confused the jury....

At the early stages of this proceeding, it was my belief that it was possible to try these three defendants together, without confusing the jury. After having heard the insightful questions posed by jurors during the course of the trial, a practice which I allowed, I am even more convinced that the jury fully understood the complexities of the case and was capable of giving each defendant separate consideration. Moreover, although I have seen no opinion stating as much, this circuit's aversion to severance might well be based on the understanding that often it is only through the joinder of defendants, particularly defendants who pose antagonistic defenses, that the full story of a case emerges. It seems to me that this beneficial objective may have been achieved in this case.

Accordingly, for the foregoing reasons, defendants' motions for judgment of acquittal are DENIED.