# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3819

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas |
| Jerry Wade Wainright, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 9, 2003

Filed: December 9, 2003

_____

Before LOKEN, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Jerry Wade Wainright ("defendant") appeals from a final judgment entered in the United States District Court[1] for the Western District of Arkansas upon a jury verdict finding him guilty of interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314, 2. The district court sentenced him to 24 months

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

imprisonment, three years supervised release, restitution in the amount of $15,016.92,[2] and a special assessment of $100.00. For reversal, defendant argues that the district court erred in (1) admitting an investigation summary (Government Exhibit 40) into evidence, (2) admitting defendant's bank statements into evidence (Government Exhibits 28, 30, 31, 32, 34, and 36), (3) denying defendant's motion for judgment of acquittal, (4) calculating loss in regard to defendant's total offense level, and (5) applying a two-level enhancement for more than minimal planning. For the reasons discussed below, we affirm the conviction and sentence.

## JURISDICTION

Jurisdiction in the district court was proper pursuant to 18 U.S.C. § 3231. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

## BACKGROUND

Between December 1995 and December 1997 defendant contracted to cut and haul timber in Arkansas and Louisiana for several different landowners or managers. These contracts were on a pay-as-cut basis. Pay-as-cut means a per unit price is agreed upon and the contractor pays as he or she cuts and hauls the timber, usually on a weekly or bi-weekly basis.

Under the Government's theory of the case, defendant would cut particular tracts of timber on a pay-as-cut basis and would agree to pay for all loads of timber

---

[2]The amount of restitution was $6,501.85 to Deltic Land and Timber Company and $8,515.07 to Mark David Burnside. The restitution that was ordered is for timber that defendant cut and for which he did not pay the timber owners.

removed from said tracts on a weekly basis. Defendant agreed to haul the loads to specific mills, but would cause some of the loads to be delivered to unauthorized mills and turn in the loads under his name or someone else's name, instead of the name of the actual owner. Defendant would use the name of a legitimate timber dealer or timber company to disguise the source and true owner of the timber so that he would receive the full value for the timber. Defendant received direct payment from the timber mills for all the loads turned in under his contracts. Defendant would then give the landowners or timber managers checks and the scale tickets for timber he represented he had cut and hauled from timber tracts. As a result of his scheme, defendant received in excess of $350,000.00.

In October 1997, Jim Baldwin, an investigator with the Louisiana Department of Agriculture and Forestry, received a timber theft complaint from Mark David Burnside regarding property he owned in Louisiana. Burnside stated that in November 1996 he hired defendant to log some of his property on a pay-as-cut basis. Defendant began working on Burnside's property in November 1996 and concluded in January 1997. Burnside claimed that defendant did not pay him for timber he removed from Burnside's property. Baldwin collected the scale tickets and checks that Burnside received from defendant. Burnside pointed out that one of the scale tickets defendant gave him had the name Deltic Land and Timber Company ("Deltic") on it, which led Burnside to believe the timber did not come from his land.

During November and December 1997, Baldwin went to various mills and wood-receiving facilities in Louisiana and Arkansas and found tickets that had Burnside's name or address on them. Baldwin also found tickets that had been turned in with defendant's name and which had been paid in total to defendant. Baldwin and FBI Special Agent Charles Fields began a joint investigation into defendant's logging activities from December 1995 through December 1997. They contacted numerous landowners, mills, wood-receiving facilities, and wood dealers in Arkansas and Louisiana. The investigators obtained scale tickets, settlement sheets, checks, and

logging records involving defendant, his company Wainright Trucking, and Circle J Logging. The investigators were able to identify 541 loads that had been stolen by defendant. These stolen loads had a value of $369,329.07. Of the 541 stolen loads, 157 had been transported in interstate commerce and had a value of $107,977.26.

In January 2002, a federal grand jury charged defendant in a superceding indictment with six counts of mail fraud and two counts of interstate transportation of stolen property. Defendant's jury trial commenced on June 10, 2002. During the trial, the district court admitted into evidence Government Exhibit 40, a summary of defendant's logging activities prepared by Baldwin over defendant's objection. The district court also admitted into evidence Government Exhibits 28, 30, 31, 32, 34, and 36, which were summaries of defendant's bank accounts in a spreadsheet format. These bank account summaries, admitted over defendant's objections, showed that defendant had written several checks with insufficient funds. The district court denied defendant's motion for judgment of acquittal.

The jury found defendant guilty of interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314, 2 (count 7). The jury found defendant not guilty on six counts of mail fraud and an additional count of interstate transportation of stolen property. The presentence report recommended an 11-level enhancement in offense level because the loss was in excess of $350,000.00 and a 2-level enhancement for more than minimal planning. Defendant objected to the enhancements. The district court denied the objections. The district court sentenced defendant to 24 months imprisonment, three years supervised release, restitution in the amount of $15,016.92, and a special assessment of $100.00. This appeal followed.

**DISCUSSION**

*Logging Summary*

Defendant argues on appeal that the district court abused its discretion in admitting Government Exhibit 40, a summary of defendant's logging activities from December 1995 to December 1997 containing information from already admitted evidence. The summary included the date, time, product, mill, landowner, location or origin of loads, and whether the landowner had been paid. Defendant objected to Government Exhibit 40 at trial. The district court admitted the summary and gave a limiting instruction, pursuant to United States v. Jennings, 724 F.2d 436 (5th Cir.), cert. denied, 467 U.S. 1227 (1984). A summary must be accurate and nonprejudicial.[3] See United States v. Modena, 302 F.3d 626, 633 (6th Cir. 2002), cert. denied, 537 U.S. 1145 (2003). Defendant argues that Government Exhibit 40 impermissibly contained Baldwin's conclusions and assumptions as to payments. Defendant also argues that the prejudicial nature of a summary cannot be overcome by a limiting instruction.

"The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court." United States v. Preciado, 336 F.3d 739, 745 (8th Cir. 2003) (quoting United States v. Crockett, 49 F.3d 1357, 1360 (8th Cir. 1995)). Thus, we review the admission of the summary under an abuse of discretion standard.

---

[3]"This means... that the information on the document summarizes the information contained in the underlying documents accurately, correctly, and in a nonmisleading manner." United States v. Bray, 139 F.3d 1104, 1110 (6th Cir. 1998). Here the underlying documents were admitted.

Summary exhibits that fairly summarize the evidence are authorized by Rule 1006 of the Federal Rules of Evidence.[4] <u>See United States v. Orlowski</u>, 808 F.2d 1283, 1289 (8th Cir. 1986), <u>cert. denied</u>, 482 U.S. 927 (1987). Summary charts may be used when they help in understanding testimony already introduced and the preparing witness is subject to cross-examination with all documents used to prepare the summary. <u>See United States v. Caswell</u>, 825 F.2d 1228, 1235 (8th Cir. 1987). Charts or summaries may include assumptions and conclusions, but said assumptions and conclusions must be based upon evidence in the record. <u>See United States v. Lewis</u>, 759 F.2d 1316, 1329 n.6 (8th Cir.), <u>cert. denied</u>, 474 U.S. 994 (1985). When a district court sends a chart or diagram admitted under Rule 1006 to a jury, a limiting instruction is appropriate. <u>See United States v. Possick</u>, 849 F.2d 332, 339 (8th Cir. 1988).

At trial, Baldwin explained in detail how he developed the summary from the voluminous records of the various victims, mills, wood-receiving facilities, and wood dealers in Arkansas and Louisiana. These voluminous records had previously been introduced into evidence. Baldwin also explained how he determined whether a load was stolen. Baldwin's summary was fair, accurate, correct and nonmisleading. Defense counsel cross-examined Baldwin about the summary. The district court gave

---

[4]Rule 1006 of the Federal Rules of Evidence states:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

the jury a limiting instruction on the use of the summary. Therefore, upon careful review, we cannot say that the district court abused its discretion in admitting the summary.

*Bank Records Summaries*

Defendant also argues that the district court abused its discretion in admitting Government Exhibits 28, 30, 31, 32, 34, and 36, which were summaries of defendant's bank records put into a spreadsheet format. These exhibits were prepared from Government Exhibits 27, 29, 33, and 35, which had previously been introduced into evidence by stipulation. Defendant argued that some of the bank records noted insufficient fund checks, and that such notations made the summaries more prejudicial than probative. The district court denied defendant's objection and admitted the exhibits. Defendant argues that jurors could have believed that because he had several insufficient fund checks, he would be more likely to commit the crimes alleged by the Government.

We will reverse a district court's evidentiary rulings only where there has been a clear abuse of discretion. See United States v. Briley, 319 F.3d 360, 363 (8th Cir. 2003).

Federal Rule of Evidence 1006 permits the use of a summary of business records provided they are based upon evidence in the record. See Lewis, 759 F.2d at 1329 n.6. Where the information contained in a business records summary is introduced at trial, and the underlying evidence is available to both parties, a district court does not abuse its discretion by admitting the summary. See C.L. Maddox, Inc. v. Benham Group, Inc., 88 F.3d 592, 601 (8th Cir. 1996).

Steven Williams, an FBI financial analyst, testified that Government Exhibits 28, 30, 31, 32, 34, and 36 were summaries of defendant's bank accounts put into a spreadsheet format that would be easy to read and had been prepared from already admitted Government Exhibits 27, 29, 33, and 35. The Government argued that the summaries of defendant's bank records were evidence of defendant's financial condition that was relevant to his motive for the fraudulent scheme. The district court did not abuse its discretion in admitting into evidence Government Exhibits 28, 30, 31, 32, 34, and 36.

*Motion for Judgment of Acquittal*

Defendant also argues that the district court erred in denying his motion for judgment of acquittal. Defendant argues that there are two issues on appeal: (1) whether he transported stolen property across state lines, and (2) whether he devised or intended to devise a scheme or artifice to defraud. As to the first issue, defendant contends that the property that he transported across state lines was not stolen because he had the right to possess that property based upon his timber cutting contracts. As to the second issue, defendant argues that he was not engaged in, nor did he devise, a scheme or artifice to defraud. Defendant argues that he acquired the subject property with a "pay as you go" contract, meaning defendant would contract to cut timber and then pay the person who originally owned the timber a value only after defendant was paid by the mill. Defendant argues that, at worst, he simply did not pay on an account what is owed because of sloppy paperwork. Thus, defendant argues that the Government failed to meet its burden of proving its case beyond a reasonable doubt, and the judgment of acquittal should have been granted.

Under circumstances where a defendant presents evidence in his behalf after the denial of his motion for judgment of acquittal at the close of the Government's

case, which defendant did in this case, we examine the evidence as a whole, including that offered by the defendant. See United States v. Davis, 542 F.2d 743, 746 (8th Cir.), cert. denied, 429 U.S. 1004 (1976). We view the evidence in the light most favorable to the verdict and give the Government the benefit of all reasonable inferences that can logically be drawn from the evidence. See United States v. Nambo-Barajas, 338 F.3d 956, 960 (8th Cir. 2003). We must uphold the verdict if there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt. Id. The verdict of the jury must not lightly be overturned. See United States v. Gillings, 156 F.3d 857, 860 (8th Cir. 1998).

Defendant was charged with interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.[5] There are four elements to the offense of interstate

---

[5]18 U.S.C. § 2314 provides in pertinent part:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more...
>
> Shall be fined under this title or imprisoned not more than

transportation of stolen property: (1) the property was stolen or taken by fraud; (2) the property had a total value of $5,000.00 or more; (3) after the property was stolen or taken by fraud, the defendant moved it or caused it to be moved across a state line; and (4) at the time the defendant moved or caused the property to be moved across a state line, the defendant knew that it had been stolen or taken by fraud. See United States v. Tasy, 203 F.3d 1060, 1062 (8th Cir. 2000); United States v. Bond, 231 F.3d 1075, 1077 (7th Cir. 2000).

"[F]raud is a broad term, which includes false representations, dishonesty, and deceit." United States v. Grainger, 701 F.2d 308, 311 (4th Cir.), cert. denied, 461 U.S. 947 (1983). The evidence at trial showed defendant took the timber by fraud. Defendant's scheme involved contracting to cut and haul timber and then falsely representing to the timber owners that he had accounted for all of the timber. After this deceit, defendant dishonestly kept some or all of the proceeds from the sales of the timber for himself. Therefore, the timber was stolen or taken by fraud. The transportation of the timber is not rendered innocent by the fact that the fraud did not reach fruition until after the arrival of the loads at the mills. See United States v. Ferrara, 571 F.2d 428, 430 (8th Cir.), cert. denied, 437 U.S. 907 (1978). Defendant's contention that none of the property that he transported across state lines was stolen is without merit. Title to goods transported in interstate commerce is not a defense, if the title and possession were secured as a result of fraud or the goods were stolen within the meaning of 18 U.S.C. § 2314. See Gay v. United States, 408 F.2d 923, 927 (8th Cir.), cert. denied, 396 U.S. 823 (1969). As we stated, defendant's possession of the timber was secured as a result of fraud. Therefore, after reviewing the evidence as a whole, we conclude that a reasonable jury could have found beyond a reasonable doubt that defendant knew that the timber had been stolen or taken by fraud.

ten years, or both.

The evidence showed that the value of the timber stolen or taken by fraud by defendant exceeded $5,000.00 and that defendant moved or caused the timber to be moved across the Louisiana/Arkansas state line. Defendant argues that the Government did not prove that he devised or intended to devise a scheme or artifice to defraud. Fraudulent intent may be inferred from a series of acts and relevant circumstances. See United States v. Snelling, 862 F.2d 150, 154 (8th Cir. 1988). The evidence showed that defendant fraudulently acted in representing that he had accounted for all of the timber that was he contracted to cut and haul, while actually keeping some or all of the proceeds from the sale of the timber for himself. Defendant argues that the tickets he sent to landowners bearing the names of other companies showed nothing more than sloppy paperwork. However, fraud "may result from reckless and needless representation even when not made with a deliberate intent to deceive." Grainger, 701 F.2d at 311. A reasonable jury could have concluded from the evidence as a whole that defendant devised or intended to devise a scheme or artifice to defraud beyond a reasonable doubt. Accordingly, the district court properly denied defendant's motion for judgment of acquittal.

*Calculation of Loss*

Defendant argues that the district court erred in calculating loss in regard to defendant's total offense level. The November 1, 1995 edition of the Guidelines Manual was used in this case. Defendant's sentence was based on a total offense level of 17. The base offense level was 4 pursuant to U.S.S.G. § 2B1.1. The base offense level was increased by 11 levels because the total loss was more than $350,000.00. Defendant objected, arguing that because the loss in the count of conviction was $23,724.70, the loss for sentencing purposes should be based only on that figure, not the "more than $350,000.00" figure. The district court found that the loss included relevant conduct caused by the scheme, noting that acquitted conduct can be considered if it is proved by a preponderance of the evidence, and concluded that the loss of more than $350,000.00 was supported by a preponderance of the

-11-

evidence. Defendant argues that this ruling violates Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Defendant concedes that including his acquitted conduct did not put his sentence beyond the statutory maximum, but argues that, under Apprendi, a jury should make factual findings as to matters that enhance his sentence.

Normally we review a district court's factual determinations at sentencing for clear error and its application of the sentencing guidelines de novo. See United States v. Waldman, 310 F.3d 1074, 1079 (8th Cir. 2002). However, because defendant did not raise his Apprendi argument before the district court, his claim is reviewed for plain error. See United States v. Walker, 324 F.3d 1032, 1041 (8th Cir.), cert. denied, 124 S.Ct. 247 (2003).

In United States v. Madrid, 224 F.3d 757, 762 (8th Cir. 2000), a case decided after Apprendi, this court reaffirmed that acquitted conduct can be considered when determining a sentence under the Sentencing Guidelines, so long as that conduct has been proved by a preponderance of the evidence. The district court found that the total value of the loss, including the acquitted conduct, by a preponderance of the evidence, exceeded $350,000.00. Furthermore, the rule of Apprendi only applies where the district court's factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict. See Walker, 324 F.3d at 1041. Because defendant's sentence did not exceed the statutory maximum sentence (the statutory maximum sentence is 10 years; defendant was sentenced to 24 months imprisonment), Apprendi does not apply. We hold that the district court did not commit plain error in calculating the total offense level and that there was no Apprendi violation.

*Enhancement Under U.S.S.G. § 1B1.1*

Finally, defendant argues that the district court erred in applying a two-level enhancement for more than minimal planning. U.S.S.G. § 1B1.1 defines more than minimal planning as "[p]lanning in a case involving repeated acts over an extended period of time." The district court concluded that defendant planned the scheme involving repeated acts over an extended period of time and denied defendant's objection to the two-level enhancement. Defendant argues that, under Apprendi, a jury should have determined whether he engaged in more than minimal planning.

Defendant did not raise his Apprendi argument before the district court, and so we review his claim for plain error. See Walker, 324 F.3d at 1041. As we have stated, the rule of Apprendi only applies where the district court's factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict. See id. Defendant's sentence did not exceed the statutory maximum sentence. Thus, Apprendi does not apply. Furthermore, the district court did not commit plain error when it applied the enhancement for more than minimal planning. Defendant's scheme required considerable effort, including taking loads to multiple mills and issuing landowners fraudulent scale tickets, over an extended period of time. Therefore, we conclude that the district court did not commit plain error in applying a two-level enhancement for more than minimal planning.

**CONCLUSION**

For the reasons stated, we affirm the conviction and sentence.

_____