# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3046

_____

United States of America,

        Appellee,

    v.

Colleen R. Anson,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Nebraska
\*
\* [UNPUBLISHED]
\*

_____

Submitted: March 9, 2004

Filed: April 12, 2004

_____

Before RILEY, McMILLIAN and MELLOY, Circuit Judges.

_____

PER CURIAM.

Colleen R. Anson appeals from a final order entered in the District Court[1] for the District of Nebraska upon a jury verdict finding her guilty of conspiracy to commit bank larceny and sentencing her to 12 months imprisonment, 3 years supervised release, restitution in the amount of $20,540.59, and a special assessment of $100.00. For reversal Anson argues that the district court erred in permitting the

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

government to cross-examine her about two incidents, admitting into evidence a summary exhibit, and sentencing her on the basis of an amount of loss greater than that attributed to her co-conspirators. For the reasons discussed below, we affirm the order of the district court.

The district court had jurisdiction over this criminal prosecution under 18 U.S.C. § 3231. The court of appeals has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Anson filed a timely notice of appeal under Fed. R. App. P. 4(b).

Anson was the manager of a branch bank located in a supermarket in Papillion, Nebraska. She was often the only teller on duty. According to the government's theory of the case, in late 2001 Anson persuaded a customer of the bank, Stephanie Ashe, to participate in a staged robbery of the bank. Anson told Ashe about the location of surveillance cameras, that she would delay reporting the robbery, that she would move the bank surveillance camera that overlooked the bank counter, and that she would identify the "bait bills" and the best time for the robbery. Ashe recruited a co-worker, John McDonald, to pose as the robber.

Ashe and McDonald bought a disguise for McDonald, and Ashe drove McDonald to the bank on February 9, 2002. Ashe had called Anson to tell her they were coming. McDonald entered the supermarket through the south doors (Anson had told them that there were no surveillance cameras at that entrance). McDonald approached the bank and stood in front of the gate area (and not in front of the bank counter), handed Anson a bag, and demanded money. Anson put $5,547.00 in the bag, including several "bait bills" that she had paperclipped together, but no "dye pack." Anson did not activate the bank's silent alarm during the robbery.

Investigation revealed that Anson had repositioned one of the bank surveillance cameras several days before the robbery. As repositioned, the bank surveillance

camera did not cover the area where McDonald stood during the robbery. An audit conducted by bank officials after the robbery disclosed that $20,540.59 was missing from the teller drawer. The $5,547.00 was to be divided four ways, but Ashe only took about $500.00 and Anson did not receive any of the money. About a week later, McDonald left Nebraska and traveled around for a couple of months. He returned to Nebraska and turned himself in to authorities.

A federal grand jury indicted Anson, Ashe and McDonald, charging them with conspiracy to commit bank larceny and bank larceny. Ashe and McDonald pleaded guilty and testified for the government pursuant to cooperation agreements. At trial, Anson testified in her own defense and denied any involvement in the robbery. Anson also denied having ever been accused of stealing from her employer (other than this robbery) and, over defense objections, the government cross-examined her about two prior incidents-- withdrawing funds from a bank customer's account without authorization and embezzling bank funds. A bank official testified about the bank audit and the $20,540.59 found to be missing from the teller drawer, as noted in a summary of transactions (Ex. 6). After a three-day trial, the jury found her guilty of conspiracy but not bank larceny.

At sentencing Anson objected to the total amount of loss ($20,540.59) attributed to her in the presentencing report. The district court denied the objection and sentenced her to 12 months imprisonment, 3 years supervised release, restitution in the amount of $20,540.59, and a special assessment of $100.00. This appeal followed.

First, Anson argues that the district court abused its discretion in permitting the government to cross-examine her about withdrawing funds without authorization from a bank customer's account and embezzling bank funds. She argues that the incident involving the customer account did not involve her employer and that the bank did not investigate the embezzlement until after her employment ended and that

she was never actually accused of embezzling this money. Anson argues that the government's cross-examination improperly tried to show that she was a thief, rather than to impeach her credibility.

We find no abuse of discretion. As noted by the district court, Anson had opened the door to cross-examination about these prior incidents in order to impeach her credibility, pursuant to Fed. R. Evid. 608(b), when she denied having ever been accused of stealing from her employer (other than the charged offense). Rule 608(b) permits cross-examination about specific bad acts that have not resulted in felony convictions if those acts concern the witness's credibility, but forbids the introduction of extrinsic evidence to prove the specific bad acts occurred.

Anson next argues that the district court abused its discretion in admitting into evidence the bank audit sheet as a business record pursuant to Fed. R. Evid. 803(6) without proper foundation. The bank audit sheet showed that $20,540.59 was missing, not just the $5,547.00 Anson handed over to McDonald during the robbery. We find no abuse of discretion. The bank audit sheet was admitted as a summary exhibit pursuant to Fed. R. Evid. 1006. Bank vice-president Susan Fleetwood testified that she was responsible for the oversight of accounting and operations of the bank and its branches. After being informed about the robbery, she reviewed all the transactions conducted by Anson at the bank that day. The review (a "teller cash reconciliation") was done the day after the robbery and was summarized as the bank audit sheet. E.g., United States v. Wainwright, 351 F.3d 816, 820 (8th Cir. 2003).

Anson next argues that the district court erred in increasing her offense level by 4 levels based on a loss of $20,540.59 (more than $10,000 but less than $30,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(C)). Anson argues that her co-conspirators Ashe and McDonald were assessed only a 2-level increase for a loss of $5,547.00 (more than $5,000 but less than $10,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(B)). Anson argues that the district court misapplied the sentencing guidelines by assessing a

-4-

different amount of loss for defendants involved in the same conspiracy. She argues that the district court should resentence her on the basis of the same amount of loss as her co-conspirators. We do not agree. The 4-level increase was based on evidence which showed that Anson was responsible for a loss of $20,540.59.

Accordingly, the order of the district court is affirmed.

_____