# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1520

_____

United States of America,                *

                                *

       Appellee,         *

                                *   Appeal from the United States

    v.                      *   District Court for the

                                *   Eastern District of Missouri.

Donnell McCloud,              *

                                *

       Appellant.       *

_____

Submitted: September 24, 2009
Filed:  December 29, 2009

_____

Before BYE, ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Donnell McCloud was convicted of three counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), for taking photographs of three minor females engaged in sexually explicit conduct. McCloud raises five arguments for reversal, which include his argument that the government failed to prove that he produced the images and four arguments challenging the constitutionality of § 2251(a). For the reasons discussed below, we reject McCloud's arguments and affirm the judgment of the district court.[1]

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

## I. *Background*

In 2008, the St. Louis Police Department executed a search warrant at McCloud's apartment for narcotics and weapons. After entering the residence, officers observed McCloud—a 28-year-old male—dive out of his bedroom to the living room naked. A nude, 15-year-old female, K.G., was hiding under the bed. The officers seized a Kodak camera and computers from McCloud's apartment. The Kodak camera contained a Lexar 512 MB memory card. In turn, the memory card contained 12 videos. The videos, seven of which were shown to the jury, depict K.G. engaged in oral and vaginal sexual intercourse with McCloud or K.G.'s exposed genitals.

Law enforcement had previously investigated McCloud in 2004 for the statutory rape of G.D., a 14-year-old girl. At that time, Detective Karon Crocker went to McCloud's residence and spoke to Teresa Strong, McCloud's live-in girlfriend. Strong gave Detective Crocker permission to search the residence for evidence of McCloud's relationship with G.D. Police found a scrap of paper with G.D.'s name on it hidden inside a stereo speaker. They seized numerous cameras from the residence, as well as a blue bag from the storage area of the basement containing hundreds of photographs depicting sexual acts with young females. According to Detective Crocker, the blue bag contained 96 photographs of G.D. in various stages of nudity and engaged in sexual acts. For example, ten of the photographs depicted G.D. displaying her nude genitals or engaged in sexual acts with a male. The photographs were printed on Fujicolor crystal archive photo paper. Detective Crocker testified that G.D. had identified the photographs as depicting her and McCloud and signed the backs of the photographs.

When Detective Joe Kuster arrested McCloud in 2008 for the statutory rape and sodomy of K.G., McCloud told Detective Kuster that he liked young teenage girls. Thereafter, Detective Richard Noble reviewed the evidence from the 2004 statutory rape investigation of G.D. He examined the blue canvas bag that contained hundreds of photographs of young females that were clothed, partially clothed, nude, and

engaged in sexual acts. He attempted to sort them by the females depicted in the photographs. During his examination, he found a 2003/2004 McCluer High School ID for C.W. He located approximately a hundred photographs of C.W. clothed or partially dressed and engaged in sexual acts. Detective Noble showed the photographs to C.W., who identified them as depicting her when she was 14 years old. Detective Noble testified at trial that eight of the admitted photographs depicted C.W. and that six of the photographs depicted her nude or performing oral sex. The photographs were printed on Fujicolor crystal archive photo paper.

McCloud was indicted on three counts of production of child pornography ("Counts 1, 5, and 6.").[2] Prior to trial, McCloud filed pretrial motions, and the district court held two separate evidentiary hearings. McCloud moved to dismiss, inter alia, Counts 1, 5, and 6 because (1) the government failed to show that the instrumentalities allegedly used traveled in or otherwise affected interstate commerce; (2) the memory card and the photo paper were not criminal instrumentalities; and (3) § 2251(a) is an unconstitutional exercise of Congress's authority under the Commerce Clause. The district court denied McCloud's motion to dismiss.

Thereafter, the government submitted a motion in limine to exclude any evidence, argument, or affirmative defense that McCloud was made to believe and did in fact mistakenly believe that some of the victims for the charge of production of child pornography were at least 18 years old. The district court granted the motion.

At trial, K.G.—the victim in Count 1—testified that she met McCloud on the UrbanChat page and that they communicated through UrbanChat, MySpace, and by

_____

[2]McCloud was originally charged with one count of production of child pornography, in violation of 18 U.S.C. § 2251. A superseding six-count indictment charged McCloud with three counts of production of child pornography, in violation of § 2251, and three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A. Prior to trial, the government dismissed the three possession counts.

telephone. K.G. told McCloud that she wanted to leave home and go to Wichita, Kansas, but he refused to take her. He agreed to buy her a Greyhound bus ticket to come to stay with him in St. Louis. K.G.—then age 14—traveled from Springfield, Missouri, to St. Louis, Missouri. McCloud took her to his apartment. Within a few days, McCloud engaged in oral and vaginal sexual intercourse with K.G. McCloud also took photographs of himself having oral and vaginal sex with K.G. K.G. identified the seven videos on the memory card as depicting McCloud having sex with her. She stated that McCloud took the videos.

The government admitted K.G.'s birth certificate into evidence, which showed that her date of birth was February 1, 1993. Thus, the birth certificate established that K.G. was 14 years old and then turned 15 years old during the alleged creation of the child pornography. K.G. acknowledged that her MySpace page stated that she was 17 years old. She said that she had a fake ID that represented her age to be 17.

The government introduced business records from Lexar Media, Inc. stating that the Lexar memory card was manufactured in Taiwan and shipped from Korea. The forensic examiner, Brian Mize, testified that the memory card containing the child pornography was manufactured in Taiwan and shipped to the United States via Korea.

G.D. was the victim of Count 5. At trial, her birth certificate was admitted, which indicated that her date of birth was June 5, 1990. Her death certificate attested that her date of death was May 7, 2005.

C.W. was the victim of Count 6. Her birth certificate was admitted into evidence attesting that her date of birth was May 2, 1989. C.W. testified that, when she was 14 years old and a freshman in high school, she met McCloud through a friend. She told McCloud that she was a freshman in high school and 14 years old. She testified that she and McCloud engaged in oral and vaginal sex. According to C.W., McCloud took photographs of her nude and engaged in sexual intercourse with

him. He took the photographs at his house and at his grandmother's house. McCloud ended the relationship because C.W. was turning 15 years old. C.W. identified herself as the girl in the photographs. She stated that McCloud took the photographs. She also testified that, in some of the photographs, she is performing oral sex on McCloud.

The government introduced business records from Fujifilm U.S.A., Inc. ("Fujifilm") into evidence. The records stated that Fujicolor crystal archive photo paper is primarily produced in Greenwood, South Carolina, and that a small percentage of the paper comes from the Netherlands. The business records indicate that the Greenwood plant was founded in 1988 and that the color paper portion of the plant opened in August 1996.

At the close of the government's case-in-chief, McCloud stated, "I'll move for an acquittal at the close of the government's evidence arguing to this court that the case is insufficient as a matter of law." The district court denied the motion.

McCloud testified that he met K.G. on the Internet. He purchased a bus ticket for her and picked her up from the Greyhound station. He started having sexual relations with her within a week. He testified that he had sex with C.W. for about six months. He stated that he takes photographs of himself engaged in sexual activities with girlfriends. The blue bag was filled with photographs that he took over the course of his lifetime. He admitted that he had taken photographs of G.D. in the nude. He admitted that he took photographs of C.W. nude and engaged in oral sex. He also admitted that he took seven videos of K.G. that were shown to the jury.

During trial, the district court prohibited McCloud from introducing evidence that he was mistaken about the minors' true age.

McCloud made a motion for judgment of acquittal at the close of all evidence, and the district court denied it. The district court also overruled McCloud's proposed

instruction regarding a mistake-of-age defense. The jury found McCloud guilty of all three counts. The district court sentenced McCloud to 30 years' imprisonment on Counts 1, 5, and 6 to run concurrently and imposed a lifetime of supervised release.

## II. *Discussion*

On appeal, McCloud argues that (1) the district court erroneously denied his motion for judgment of acquittal at the close of all evidence with respect to Count 5 because the government failed to produce any evidence that McCloud actually produced the images or otherwise caused the images to be produced; (2) § 2251(a) is unconstitutional because it does not require knowledge of a minor's age and does not permit a reasonable-mistake-of-age defense, in violation of the First Amendment and the Fifth Amendment; (3) in the alternative, the district court erred in not permitting an affirmative mistake-of-age defense, as § 2251(a) does not preclude such a defense; (4) § 2251(a) is an unconstitutional exercise of Congress's authority under the Commerce Clause as applied to McCloud because the memory card and photo paper are not instrumentalities of interstate commerce; and (5) even if the memory card and photo paper are "instrumentalities," the government failed to prove that they traveled in interstate commerce.

## A. *Sufficiency of the Evidence—Count 5*

First, McCloud challenges his conviction on Count 5 for producing child pornography involving G.D., in violation of 18 U.S.C. § 2251(a), asserting that the government failed to produce any evidence that McCloud actually produced the images or otherwise caused the images to be produced. McCloud thus argues that the district court erroneously denied his motion for acquittal at the close of the government's evidence on Count 5.

In response, the government argues that the district court properly denied McCloud's motion for acquittal at the close of the government's case because it presented sufficient evidence that McCloud knowingly produced child pornography

with G.D. Specifically, the government notes that it presented evidence that photographs of G.D.—nude and engaged in sexual acts with McCloud—were seized from a blue canvas bag in McCloud's residence. In that same bag were photographs of K.G. and C.W., and both K.G. and C.W. testified that McCloud engaged in sexual acts with them and photographed those acts.

"Under circumstances where a defendant presents evidence in his behalf after the denial of his motion for judgment of acquittal at the close of the Government's case, which defendant did in this case, we examine the evidence as a whole, including that offered by the defendant." *United States v. Wainright*, 351 F.3d 816, 822 (8th Cir. 2003). This is because "a defendant's decision to present evidence in his behalf following denial of his motion for a judgment of acquittal made at the conclusion of the Government's evidence operates as a waiver of his objection to the denial of his motion." *United States v. Thomas*, 987 F.2d 697, 702 (11th Cir. 1993) (internal quotations and citation omitted). A defendant who "offers rebuttal evidence . . . forgoes or waives appellate review of . . . the denial of the motion." *Id.* (internal quotations and citations omitted). "Because of the waiver rule, a defendant who presents the testimony of himself or of others and asks the jury to evaluate his credibility (and that of his witnesses) against the government's case cannot insulate himself from the risk that the evidence will be favorable to the government." *Id.* (internal quotations, alterations, and citations omitted).

"We view the evidence in the light most favorable to the verdict and give the Government the benefit of all reasonable inferences that can logically be drawn from the evidence." *Wainright*, 351 F.3d at 822. "[I]f there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt," then "[w]e must uphold the verdict." *Id.* We will not lightly overturn a jury's verdict. *Id.*

Here, the jury convicted McCloud of violating § 2251(a). A defendant violates § 2251(a) when he

> employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . .

A defendant "uses" a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct. *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007).

McCloud concedes in his brief that he testified that he had a sexual relationship with G.D. and photographed her engaged in sexually-explicit conduct. Specifically, he states:

> On cross-examination during the defen[dant]'s case, Mr. McCloud made statements that he *did participate in a sexual relationship with [G.D.]* and that he *did at some point take photographs of her*. This argument is not for insufficiency of the evidence as a whole, simply that at the point in time when the Court was presented with the motion, the Government had not met its burden with respect to that count.

(Emphasis added.)

Because McCloud chose to testify after the district court denied his motion for judgment of acquittal at the close of the government's case-in-chief, we must take McCloud's testimony into account when considering whether sufficient evidence exists that McCloud "used, persuaded, or enticed" G.D. and produced the photographs

-8-

of G.D. McCloud's own testimony defeats his argument, as it supplied the alleged "missing" element of whether McCloud actually photographed G.D.

Accordingly, we affirm McCloud's conviction as to Count 5.

B. *Constitutionality of 18 U.S.C. § 2251(a)—First Amendment and Fifth Amendment*

Second, McCloud asserts that § 2251(a) is unconstitutional because it does not require a mens rea for the minor's age and does not permit a reasonable mistake-of-age defense, in violation of his freedom of speech under the First Amendment and his right to due process under the Fifth Amendment.

In response, the government argues that this court previously held in *United States v. Wilson*, 565 F.3d 1059 (8th Cir. 2009), that § 2251(a) does not violate the First Amendment even though it lacks a requirement that the defendant "know" the age of the minor. Likewise, it contends that the absence of a mistake-of-age defense under § 2251(a) does not violate due process because such an omission is consistent with the long history of the exception to the mens rea requirement in sex offenses.

Here, the district court granted the government's motion in limine to exclude any evidence, argument, or affirmative defense that McCloud was made to believe and did in fact mistakenly believe that some of the victims for the charge of production of child pornography were at least 18 years old. "We review a district court's grant of a motion in limine for abuse of discretion, and we accord it great deference on evidentiary rulings such as the admissibility of proffered testimony." *United States v. Fincher*, 538 F.3d 868, 872 (8th Cir. 2008) (internal citations omitted). However, we apply de novo review to a district court's legal conclusions. *Id.*

McCloud concedes in his brief that this court has already held that disallowing a mistake-of-age defense does not violate a defendant's First Amendment rights. In

*Wilson*, we held that "the First Amendment does not require a reasonable-mistake-of-age defense to charges of producing child pornography in violation of section 2251(a)." 565 F.3d at 1069; *see also United States v. Pliego*, 578 F.3d 938, 942–43(8th Cir. 2009) (holding that district court did not (1) abuse its discretion in refusing to instruct the jury that knowledge of the victim's age is an element of the offense or (2) err in ruling that defendant could not raise his lack of knowledge of the victim's age as an affirmative defense).

But McCloud maintains that the "central issue" is whether precluding a defendant from presenting a reasonable-mistake-of-age defense violates his Fifth Amendment right to due process. We addressed a similar argument in *Wilson*. In that case, the defendant argued "that his due process rights were violated because the jury was not instructed that the government must prove he knew the Victim's age." 565 F.3d at 1066. The defendant did acknowledge that § 2251(a) "contains no scienter requirement." *Id*. (citing *United States v. X-Citement Video, Inc*., 513 U.S. 64, 76 n.5 (1994) ("producers may be convicted under § 2251(a) without proof they had knowledge of age"); *United States v. Deverso*, 518 F.3d 1250, 1257 (11th Cir. 2008)). The defendant's "sole argument for requiring the government to prove knowledge of the Victim's age [was] the fact that the government in a previous production-of-child-pornography case, *United States v. Kent*, 531 F.3d 642 (8th Cir. 2008), did not object to a jury instruction requiring proof of knowledge as an element of the offense." *Id*. We held that *Kent* had "no relation to the current case and the district court did not abuse its discretion when it denied [the defendant's] request to include a scienter requirement in the jury instructions." *Id*.

Following *Wilson*, we held that a district court did not (1) abuse its discretion in refusing to instruct the jury that knowledge of the victim's age is an element of the offense of producing child pornography or (2) err in ruling that the defendant could not raise his lack of knowledge as an affirmative defense. *Pliego*, 578 F.3d at 942–43. In *Pliego*, the defendant first argued that the district court erroneously refused to

"instruct the jury that knowledge of the victim's age is an element of § 2251(a)," despite his concession that the statute "does not contain an express scienter requirement." *Id*. at 942. Instead, the defendant relied on *X-Citement Video* in support of his argument that "knowledge of the victim's age is an element of the offense and that the jury should have been instructed accordingly." *Id*. We rejected the defendant's argument, highlighting "the Supreme Court's explicit statement that a defendant may be convicted under § 2251(a) without proof that he or she had knowledge of the victim's age." *Id*. at 943 (citing *X-Citement Video*, 513 U.S. at 76 n.5).

Next, the defendant in *Pliego* contended that the district court erroneously ruled that he could not raise a reasonable-mistake-of-age defense, relying on—as McCloud does in the present case—*United States v. U.S. District Court for the Central District of California*, 858 F.2d 534 (9th Cir. 1988). *Id*. "In that case, the Ninth Circuit held that, although '[t]he defendant's awareness of the subject's minority is not an element of' § 2251(a), 'the [F]irst [A]mendment requires a reasonable mistake of age defense.'" *Id*. (quoting *Central District*, 858 F.2d at 538, 542). But we rejected the defendant's argument, explaining that "we declined to adopt the Ninth Circuit's rationale" in *Wilson*. *Id*. (citing *Wilson*, 565 F.3d at 1067–69); *see also United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009) (rejecting defendant's argument that his due process rights were violated by not being able to present a mistake-of-age defense under § 2251 because "the evidence that [the defendant] wished to present in his defense was irrelevant to the crime charged and, therefore, it was properly excluded by the district court").

In accordance with our prior precedents in *Wilson* and *Pliego*, we hold that the district court's preclusion of a reasonable-mistake-of-age defense did not violate McCloud's right to due process.[3]

---

[3]McCloud makes an alternative argument that a lack of a mens rea element in § 2251(a) does not necessarily preclude an affirmative defense. As in *Malloy*, 568 F.3d at 177, we view the argument of whether § 2251(a) permits a reasonable-

## C. *Commerce Clause*

Third, McCloud maintains that § 2251(a) is an unconstitutional exercise of Congress's authority under the Commerce Clause. McCloud contends that the government failed to show that the memory card and photo paper were instrumentalities of interstate commerce. According to McCloud, "In stating that some object that was utilized during the commission of the crime is an 'instrumentality of interstate commerce' simply because it was manufactured outside the state is beyond the scope of the commerce clause." In the alternative, McCloud argues that even if this court holds that the memory card and photo paper are "instrumentalities," the government failed to prove that those items traveled in interstate commerce.

In response, the government points out that this court has repeatedly held that § 2251(a) is a valid exercise of the Commerce Clause where jurisdiction is based on evidence that the materials used to produce the child pornography traveled in interstate commerce. Furthermore, it asserts that sufficient evidence exists that the items traveled in interstate or foreign commerce.

### 1. *Whether § 2251 is a Constitutional Exercise of Congress's Authority*

"[W]e have previously upheld the validity § 2251 against Commerce Clause attack." *Pliego*, 578 F.3d at 944 (citing *United States v. Betcher*, 534 F.3d 820, 824 (8th Cir. 2008) (rejecting the defendant's argument that "the mere transportation across state or international lines of cameras used in the manufacture of child pornography does not constitute an impact upon interstate commerce sufficient to form a jurisdictional basis upon which Congress could validly prohibit the charged conduct under its Commerce Clause powers")).

---

mistake-of-age defense as an evidentiary one and hold, based on our prior analysis, *see* Part II.B., that the district court did not abuse its discretion in refusing to admit such defense evidence.

As a result, McCloud's "argument that § 2251(a) exceeds Congress's authority under the Commerce Clause is without merit." *Id*.

2. *Sufficiency of the Evidence—Memory Card and Photo Paper*

In the alternative, McCloud argues that no evidence exists that the memory card or photo paper traveled in interstate commerce. First, he asserts that there is no evidence of how the memory card got from Taiwan to Missouri. According to McCloud, the government essentially drew the inference that the memory card "necessarily traveled in interstate *commerce* because it traveled interstate"; there was no evidence of how the memory card got into McCloud's possession. He hypothesizes that he could have purchased the card in Taiwan and brought it home with him or received it as a gift from someone that purchased it in another country.

With regard to the photo paper, he argues that the government presented no evidence about how this paper—which was at least four years old—was manufactured. He contends that there was no evidence that the company that manufactured the paper produced it in South Carolina or the Netherlands, nor was there any evidence regarding how long the manufacturing operations had been in place or how the paper was shipped in interstate commerce.

According to the government, McCloud's argument that the government was required to show that he did not purchase the memory card in Taiwan and carry it to the United States fails both legally and factually. First, the government maintains that this court has rejected the argument that a camera's crossing state lines and subsequent use to produce child pornography was not sufficient to establish a jurisdictional nexus under the Commerce Clause. *See Fadl*, 498 F.3d at 866. Second, the government asserts that the evidence established that the memory card "according to the records was manufactured in Taiwan and then shipped to the United States via Korea."

-13-

In *Fadl*, the defendant asserted that § 2251(a) was unconstitutionally applied to his case because he did not transmit any images of child pornography across state lines and the government presented no evidence that he had intended to do so. 498 F.3d at 865–66. In rejecting the defendant's argument, we cited the defendant's acknowledgment "that he used cameras that had crossed state lines to take the photographs." *Id*. We observed that this court "has on a number of occasions held that the use of a camera that has moved in interstate commerce provides a sufficient jurisdictional nexus to punish the production of child pornography under the Commerce Clause." *Id*. (citing *United States v. Mugan*, 441 F.3d 622 (8th Cir. 2006) (holding that federal statute prohibiting local production of child pornography using materials that had moved in interstate commerce was not unconstitutional as applied to defendant; defendant had taken digital pictures of himself engaging in intercourse with his 13-year-old daughter and then stored images on digital memory card, which had previously been transported in interstate commerce, and storage of images on digital card placed them on medium which would permit immediate and widespread dissemination over the internet)).

Here, all the government had to prove was that the memory card "crossed state lines." *See Fadl*, 498 F.3d at 866. Therefore, even if McCloud purchased the memory card and carried it to the United States, the product still "crossed state lines." The records admitted into evidence established that the memory card was manufactured in Taiwan and then shipped to the United States via Korea. Therefore, the government sufficiently proved that the memory card used to produce the sexually explicit images of K.G. traveled in interstate or foreign commerce.

In response to McCloud's argument that the government failed to show that the South Carolina plant that manufactured the Fujicolor crystal archive photo paper was operating in 2004—when the printed photographs of child pornography were seized from McCloud's residence—the government asserts that the Fujifilm records admitted into evidence showed that the color paper portion of the Greenwood, South Carolina

plant opened in August 1996. Thus, the government argues that it established that the Fujifilm crystal archive photo paper used to produce the child pornography of C.W. and G.D. had traveled in interstate commerce.

The government is correct that the Fujifilm records admitted into evidence showed that the color paper portion of the Greenwood, South Carolina plant opened in August 1996. Government's exhibit 65 is a letter from Douglas Fachnie of Fujifilm to Carrie Constantin, an Assistant United States Attorney. The letter provides, in relevant part:

> The following documents confirm that the Fujicolor Crystal Archive line of paper that is marketed in the United States is primarily produced in Greenwood, South Carolina. A small percentage of the paper also comes from Tilburg, Netherlands.
>
> Enclosed you will find a Powerpoint presentation routinely presented to industry members, media and our larger customers. The "Product Lines" slide of this presentation highlights color photographic paper as one of the products produced in FUJIFILM U.S.A., Inc's Greenwood, South Carolina facility. In addition, enclosed is a FUJIFILM Product Information Bulletin provided to photographic labs using this paper. Page 4 of this Bulletin features the product's box marking and brand imprint on which its Greenwood, South Carolina production location is clearly labeled.
>
> The foregoing records are maintained as part of FUJIFILM U.S.A., Inc.'s ordinary course of business and are routinely relied upon in the course of business at FUJIFILM U.S.A., Inc.
>
> Based upon the foregoing information, I can assert that Fujicolor Crystal Archive Paper is not produced in the State of Missouri, but rather is produced in the State of South Carolina and The Netherlands. The attached information is a true and accurate summary of the origin of Fujicolor Crystal Archive Paper.

In the records that Fachnie provided, a Powerpoint slide specifically states "August 1996—Color Paper Plant Opens." Thus, the record evidence supports a conclusion that the South Carolina plant manufactured the paper when the printed photographs of child pornography were seized from McCloud's residence in 2004.

Accordingly, sufficient evidence exists from which a jury could find that McCloud produced child pornography with materials that had traveled in interstate commerce.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____