# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-3057

———————————————

United States of America

*Plaintiff - Appellee*

v.

Scott Bradley Olsen

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Joplin

——————————

Submitted: April 18, 2014
Filed: July 25, 2014

——————————

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

——————————

BYE, Circuit Judge.

     A jury convicted Scott Olsen of disaster fraud in violation of 18 U.S.C. § 1040 and false statements in violation of 18 U.S.C. § 1001. The district court[1] sentenced

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Olsen to two concurrent eighteen-month terms of imprisonment. Olsen appeals contending the evidence was insufficient to sustain his conviction. We affirm.

I

A May 22, 2011, tornado in Joplin, Missouri, destroyed the single-family home of Charles and Myrtle Pyle at 2305 Virginia Avenue. After the tornado, a Presidential Disaster Declaration was issued for Joplin. The Disaster Declaration enabled various forms of federal disaster assistance, primarily administered by the Federal Emergency Management Agency ("FEMA"). The assistance available after the Joplin tornado included rental assistance, replacement of essential personal property, and repairs, but was only available to individuals if their primary residence had been damaged or destroyed. For these purposes, a primary residence is the "dwelling where the applicant normally lives, during the major portion of the calendar year," 44 C.F.R. § 206.111, including a home intended for such purposes that an individual has recently moved into. The Pyles were fully insured and thus not eligible for assistance under the Disaster Declaration.

On May 26, 2011, Olsen submitted an online application for disaster assistance listing 2305 Virginia as his secondary residence. FEMA denied Olsen's claim without an inspection because his primary residence had not been damaged by the tornado. Olsen visited a disaster recovery center on June 10, 2011, and supplemented his May 26 claim with a handwritten letter stating he was moving into 2305 Virginia at the time of the tornado and detailing lost personal property. FEMA again denied Olsen's claim.

On July 9, 2011, Olsen submitted a handwritten letter to FEMA which claimed Olsen entered into a lease on May 20, 2011, and was moving his personal property into the home on May 21, 2011. Olsen also submitted a list of lost property and a document he represented to be his rental agreement for 2305 Virginia. The rental

agreement document, dated May 20, 2011, bore the purported signature of "Dean Richey" who Olsen represented as the property manager. On July 20, 2011, Olsen furnished to FEMA a printed email and word-processed letter which he purported were from Dean Richey and which detailed the rental agreement. Along with these documents, Olsen submitted two declaration and release forms signed on July 1, 2011, verifying his statements were true. During the investigation of Olsen's claim, a FEMA representative contacted Myrtle Pyle and learned Olsen had never lived at or signed a lease for 2305 Virginia. FEMA denied Olsen's claim on July 27, 2011. Olsen was indicted on one count of disaster fraud and one count of making a false statement.

At trial, the government introduced, among other evidence, hand-writing analysis showing the signature of "Dean Richey" closely resembled Olsen's known handwriting. The government also introduced evidence the Pyles did not know of Olsen and had never seen Olsen or his personal property in the vicinity of 2305 Virginia. Olsen then testified in his own defense and confirmed he had submitted the documents to FEMA. Olsen, however, articulated he had been the victim of a scam and denied fabricating the lease or letter from "Dean Richey." Olsen also admitted portions of his July 9, 2011, letter to FEMA were untrue.

The jury found Olsen guilty of both counts.

II

Olsen contends the government's evidence was insufficient to support his convictions for disaster fraud and making a false statement. We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Payton, 636 F.3d 1027, 1042 (8th Cir. 2011). If any interpretation of the evidence would allow a

reasonable-minded jury to find the defendant guilty beyond a reasonable doubt, we must uphold the verdict. United States v. McCloud, 590 F.3d 560, 565-66 (8th Cir. 2009). This standard of review is very strict, "and the jury's verdict is not to be lightly overturned." United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004).

To convict Olsen of disaster fraud in violation of 18 U.S.C. § 1040, the government needed to prove (1) Olsen made a materially false or fraudulent statement or representation to FEMA; (2) Olsen's statement was in connection with a benefit; (3) the benefit was in connection with the Disaster Declaration; and (4) the benefit was a payment, money, or thing of value of the United States. 18 U.S.C. § 1040. To convict Olsen of making a false statement in violation of 18 U.S.C. § 1001, the government needed to prove (1) Olsen made a statement or representation; (2) that Olsen knew was false, fictitious, or fraudulent; (3) Olsen made the statement or representation knowingly and willfully; (4) the statement or representation concerned a matter within the jurisdiction of FEMA; and (5) the statement or representation was material. United States v. Rice, 449 F.3d 887, 892 (8th Cir. 2006).

Olsen argues the government failed to present evidence he made a materially false statement or representation to FEMA because he denies he ever knowingly made the false statement that 2305 Virginia was his primary residence. Olsen argues because he never explicitly listed 2305 Virginia as his primary residence, he cannot be guilty of the crimes charged. After reviewing the evidence introduced at trial, including substantial evidence Olsen held out 2305 Virginia as his primary residence, we conclude the government met its burden.

While the government did not produce a specific statement from Olsen that 2305 Virginia was his primary residence, it presented copious evidence that Olsen represented as much to FEMA. For example, after Olsen's May 26 application was denied specifically because 2305 Virginia was not his primary residence, Olsen amended his application to show he was moving into 2305 Virginia at the time of the

-4-

tornado. To support his amended application, Olsen submitted a letter to FEMA claiming he rented and had already moved into the residence. Olsen also fabricated a lease as well as an email and letter from a non-existent property manager. These false representations, meant to demonstrate Olsen had moved into 2305 Virginia immediately before the tornado, were representations made to show Olsen was eligible for relief in light of the fact that 2305 Virginia was his primary residence. Finally, it was within the purview of the jury to find Olsen's contention he was the victim of fraud not credible. See United States v. Drapeau, 414 F.3d 869, 877 (8th Cir. 2005) ("The test for rejecting a jury's credibility determinations is extraordinarily stringent.") (internal quotation marks and citation omitted).

The government has met its burden, and the jury has properly performed its function. We find no error.

III

For the foregoing reasons, we affirm the judgment of the district court.

SHEPHERD, Circuit Judge, dissenting.

Because I believe there was insufficient evidence to support Olsen's conviction, I respectfully dissent. In each count of the indictment, the Government charged Olsen with making a false statement or representation of a fact, specifically that his "primary residence was 2305 Virginia Avenue, Joplin." However, the evidence at trial was that Olsen indicated on his FEMA application that his primary residence was 410 South Wall. To the question, "Is [2305 Virginia] your primary residence?" Olsen answered, "No (Secondary)." During a subsequent investigatory interview, Olsen again told the investigator that 2305 Virginia was not his primary residence, and in fact that he sustained no damage to his primary residence. Further,

-5-

in submitting subsequent materials to FEMA, Olsen never used the words "primary residence" or affirmed that 2305 Virginia was his primary residence.

No doubt, there was sufficient evidence for Olsen to be convicted of submitting a false rental agreement or false information about his lost property, but there was insufficient evidence for a jury to conclude that Olsen represented 2305 Virginia as his *primary residence*. See United States v. Vesaas, 586 F.2d 101, 104 (8th Cir. 1978) ("'It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution.'" (alteration in original) (quoting Bronston v. United States, 409 U.S. 352, 362 (1973))). In my view, the Government should be held to the allegations as set forth in its indictment.

Accordingly, I would reverse Olsen's conviction.

_____